1   K.T. Cherian (Cal. Bar No. 133967)
    Clayton C. James (admitted *pro hac vice*)
2   Maren J. Clouse (Cal. Bar No. 228726)
    Srecko Vidmar (Cal. Bar No. 241120)
3   HOGAN LOVELLS US LLP
    Four Embarcadero Center, 22nd Floor
4   San Francisco, California  94111
    Telephone:  (415) 374-2300
5   Facsimile:  (415) 374-2499

6   Peter J. O'Rourke (Cal. Bar No. 227164)
    ORACLE CORPORATION
7   500 Oracle Parkway, MS 5OP7
    Redwood Shores, California  94065
8   Telephone:  (650) 506-5200
    Facsimile:  (650) 506-7114
9
    Attorneys for Defendants
10  ORACLE CORPORATION and
    ORACLE AMERICA, INC.
11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                         OAKLAND DIVISION

15

16
    ORG STRUCTURE INNOVATIONS LLC,          Case No. 4:12-CV-00348-SBA
17
                 Plaintiff,                 **ORACLE'S NOTICE OF MOTION
18                                          AND MOTION TO DISMISS FIRST
         v.                                 AMENDED COMPLAINT;
19                                          MEMORANDUM OF POINTS AND
    ORACLE  CORPORATION  and  ORACLE        AUTHORITIES**
20  AMERICA, INC.,
                                            Date:  July 24, 2012
21               Defendants.                Time:  1:00pm

22                                          Hon. Saundra Brown Armstrong

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 24, 2012, at 1:00pm or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Saundra Brown Armstrong, United States District Judge, Oracle Corporation and Oracle America, Inc. (collectively, "Oracle") will, and hereby do, move this Court to dismiss the First Amended Complaint ("FAC", Docket No. 34) filed against Oracle by ORG Structure Innovations, LLC ("ORG Structure") for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Oracle's motion was filed originally on August 5, 2011, in the U.S. District Court for the Northern District of Illinois.  The motion was pending when the Illinois case was transferred to this Court.  Oracle's original motion and supporting brief are docket entries 39 and 41.  Pursuant to the Court's Order No. 90, Oracle now submits this Motion to Dismiss which is based upon this Notice; the attached Supplemental Memorandum of Points and Authorities; the complete files and records of this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing, oral argument relating to this motion, and any pertinent testimony presented at any hearing by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ORACLE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD ...........................................................................................2

       A.     Standard for Granting a Motion to Dismiss ............................................2

       B.     Standard for Patentable Subject Matter Eligibility Under 35 U.S.C. § 101 ...........2

III.   THE ASSERTED PATENTS' CLAIMS ARE INVALID ..................................4

       A.     The Asserted Patents' Prosecution Occurred Before *Bilski*. ..................4

       B.     ORG Structure's Claims Cover Unpatentable Abstract Ideas or Concepts ...........5

              i.     All Claims of the '010 Patent are Invalid Under 35 U.S.C. § 101...............5

              ii.    All Claims of the '156 Patent are Invalid Under 35 U.S.C. § 101...............7

              iii.   All Claims of the '777 Patent are Invalid Under 35 U.S.C. § 101...............8

       C.     Recent Federal Circuit Decisions Confirm That the Asserted Patents Claim Unpatentable Subject Matter..........................................................................9

              i.     CyberSource Corp. v. Retail Decisions, Inc. ...............................................9

              ii.    Dealertrack, Inc. v. Huber .......................................................................10

              iii.   Fort Props., Inc. v. Am. Master Lease LLC...............................................11

              iv.    Fuzzysharp Techs. Inc. v. 3DLabs Inc......................................................12

              v.     Ultramercial, LLC v. Hulu, LLC ..............................................................12

IV.    CONCLUSION ....................................................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................2

*Bilski v. Kappos,* 130 S. Ct. 3218 (2010)...............................................................1, 2, 3, 4, 9, 11

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .........................................................2

*CLS Bank Int'l v. Alice Corp.*, 2011 WL 802079 (D.D.C. 2011) ...................................................4

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) .............3, 4, 6, 9, 10

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ....................................4, 7, 10, 11, 13

*Ex parte Halligan,* 89 U.S.P.Q.2d 1355 (B.P.A.I. 2008).................................................................7

*Ex parte Myr,* 2009 WL 3006497 (B.P.A.I. 2009) .........................................................................8

*Fort Properties., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012)............11, 12, 13

*Fuzzysharp Techs. Inc. v. 3DLabs Inc.*, 447 Fed. Appx. 182 (Fed. Cir. 2011).............................12

*Glory Licensing LLC v. Toys R Us, Inc.*, 2011 WL 1870591 (D.N.J. May 16, 2011).....................3

*Gottshalck v. Benson,* 409 U.S. 63 (1972) ...................................................................................13

*In re Bilski,* 545 F.3d 943 (Fed. Cir. 2008) .............................................................................3, 6, 8

*In re Ferguson,* 558 F.3d 1359 (Fed. Cir. 2009)............................................................................3

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289 (2012) .................9, 12, 13

*SiRF Tech., Inc. v. ITC,* 601 F.3d 1319, 1333 (Fed. Cir. 2010)......................................................6

*State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.,* 149 F.3d 1368 (1998).............................4

*Ultramercial, LLC v. Hulu, LLC*, 2010 WL 3360098  (C.D. Cal. 2010).........................................2

*Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323 (Fed. Cir. 2011).......................................2, 12, 13

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996) ...........................................4

*WildTangent, Inc. v. Ultramercial, LLC*, 2012 WL 369157 (U.S. May 21, 2012).......................12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

35 U.S.C. § 101 ...................................................................................................1, 2, 5, 6, 7, 8, 14

**RULES**

Fed.R.Civ.P. 12 ............................................................................................................... 1, 2, 14

**TREATISES**

5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2009).....................................2

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 12-CV-00348 SBA

**I.   INTRODUCTION**

In *Bilski v. Kappos,* 130 S. Ct. 3218 (2010), the U.S. Supreme Court unanimously reaffirmed that patent claims directed to abstract ideas are not patentable.  When the applications leading to the three patents asserted by ORG Structure (the "Asserted Patents")[1] were initially examined by the United States Patent and Trademark Office ("PTO"), they barely survived a "patentable subject matter" rejection that was based on a more lenient *pre-Bilski* standard.  Under today's precedent, including recent guidance from the Federal Circuit, the patent claims asserted against Oracle in this litigation are invalid.

The claims of the Asserted Patents are directed to abstract concepts of granting access and approval rights based on an individual's position within an organization; namely, determining the information that an employee may access based on the employee's position in the company and the roles and rules associated with that position.  For example, a company might set an "access control rule" allowing a senior vice-president in the finance division to access a draft of the company's quarterly earnings announcement, while denying access to the announcement to a low-level employee in the marketing division.

The Asserted Patents are invalid under 35 U.S.C. § 101 as a matter of law because they cover nothing more than a combination of (1) the abstract concept of an "org chart" used in virtually every company to document the organizational relationships and hierarchies within the company, and (2) the equally abstract concept of basing access privileges on the respective role played by each person or position in that "org chart."  As such, the asserted patent claims are unpatentable on their face and each of the counts in the FAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[1] ORG Structure has asserted U.S. Patent Nos. 7,185,010 (the "'010 Patent"); 7,685,156 (the "'156 Patent"); and 7,822,777 (the "'777 Patent") (attached to the FAC as Exhibits A, B and C).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 12-CV-00348 SBA

## II.   LEGAL STANDARD

### A.  Standard for Granting a Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a complaint must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties to the court."  *Id.* at 558 (internal quotations omitted).

In deciding a Rule 12(b)(6) motion, the court "must assume that the plaintiff's allegations are true and construe the complaint in the light most favorable to the non-moving party."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Although factual allegations are taken as true, legal conclusions are given no deference.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In addition to the allegations in the complaint, the court may consider attachments to the complaint and matters of public record that are subject to judicial notice, without converting the motion into a motion for summary judgment.  *Id.*; *see also* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2009).

### B.  Standard for Patentable Subject Matter Eligibility Under 35 U.S.C. § 101

Under 35 U.S.C. § 101, a patent claim must be drawn to patent-eligible subject matter.  "Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law" and a threshold inquiry into a patent's validity.  *Bilski*, 130 S. Ct. at 3231.  A Section 101 inquiry may be properly raised on a motion to dismiss under Rule 12(b)(6), without the need for extensive discovery or claim construction. *See, e.g.*, *Ultramercial, LLC v. Hulu, LLC*, 2010 WL 3360098, at *1 (C.D. Cal. 2010) *reversed on other grounds as discussed in Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323 (Fed. Cir. 2011); *Glory Licensing LLC v. Toys R Us, Inc.*, 2011 WL 1870591, at

1    *4 (D.N.J. May 16, 2011) (granting defendant's Rule 12(b)(6) motion to dismiss because the

2    asserted patent claims were "addressed to abstract ideas.").

3           In *Bilski,* the U.S. Supreme Court unanimously confirmed that "abstract ideas" are, as a

4    matter of law, categorically ineligible for patent protection.[2]  *Bilski,* 130 S.Ct. at 3225.  The Court

5    further held that the machine-or-transformation test of patentability remains a useful, though non-

6    exclusive, investigative tool for determining whether a claim is drawn to unpatentable subject

7    matter. *Id.* at 3227.  Under that test, a claim is patentable if (1) it is tied to a particular machine or

8    apparatus; or (2) it transforms a particular article into a different state or thing.  *Id.* at 3225.  A

9    machine is a "concrete thing, consisting of parts, or of certain devices and combination of

10   devices." *In re Ferguson,* 558 F.3d 1359, 1364 (Fed. Cir. 2009).  The use of a particular machine

11   or transformation of a particular article must impose meaningful limits on the claim's scope.  *See*

12   *In re Bilski,* 545 F.3d 943, 961 (Fed. Cir. 2008).

13          Over time, courts have clarified other limitations on patentable subject matter.   For

14   example, patents cannot be issued to allow monopolies over simple business concepts.  *See Bilski,*

15   130 S.Ct. at 3231 ("Allowing petitioners to patent risk hedging would pre-empt use of this

16   approach in all fields, and would effectively grant a monopoly over an abstract idea.").  Likewise,

17   an otherwise unpatentable abstract idea or concept cannot be made patentable by limiting it to a

18   particular field of use or adding to it token components that do not limit the solution.  *Bilski,* 130

19   S. Ct. at 3221.  Moreover, the presence of seemingly physical steps to gather and input data does

20   not render the abstract idea statutory.  *In re Grams,* 888 F.2d 835, 840 (Fed. Cir. 1989).  Further,

21   "mere collection and organization of data…is insufficient to meet the transformation prong of the

22   test."  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011).

23   Similarly, conventional or obvious post-solution steps cannot "transform an unpatentable

24   principle into a patentable process."  *Parker v. Flook,* 437 U.S. 584, 590 (1978).  Finally, and

---

[2] While the Justices disagreed about what the test for patentable subject matter should be, the Court unanimously agreed that abstract business method concepts are not patentable.  *See Bilski,* 130 S.Ct. at 3231 (Kennedy, J. majority opinion), 3253 (Stevens, J. concurring opinion), 3258 (Breyer, J. concurring opinion).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 12-CV-00348 SBA

most significantly for this motion, the nominal recitation of a general-purpose computer, Internet operability, or similar non-essential limitations does not save the patent claim from being found unpatentable under Section 101.  *See, e.g.*, *CyberSource*, 654 F.3d at 1375 ("[T]he incidental use of a computer to perform the mental process of claim 3 does not impose a sufficiently meaningful limit on the claim's scope."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) ("Simply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible."); *CLS Bank Int'l v. Alice Corp.,* 2011 WL 802079, at *14 (D.D.C. 2011).

### III.   THE ASSERTED PATENTS' CLAIMS ARE INVALID

#### A.  The Asserted Patents' Prosecution Occurred Before *Bilski*.

The substantive prosecution of all three Asserted Patents occurred before the Supreme Court's *Bilski* decision on June 28, 2010[3], when the PTO followed the now-discredited "useful, concrete, and tangible result" test.  *See State St. Bank & Trust Co. v. Signature Fin. Grp., Inc.,* 149 F.3d 1368, 1373 (1998).  *Bilski* rejected that test.  *Bilski,* 130 S.Ct. at 3231.  When the PTO allowed the Asserted Patents, therefore, it did not have the Supreme Court's most recent guidance on the patentability of claims covering abstract business concepts.  Applying the Supreme Court and Federal Circuit's current precedent, this Court should find the asserted patent claims are invalid.

---

[3] The three Asserted Patents are part of the same family.  The '156 Patent and the '777 Patent are continuations of the application that resulted in the '010 Patent.  Each issued before *Bilski* was decided.  Because the matters in the prosecution history are part of the public record, the Court may take judicial notice of them.  *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("The claims, specification, and file history…constitute the public record of the patentee's claim, a record on which the public is entitled to rely.").  Although the Court need not rely on the prosecution history to find that the Asserted Patents are unpatentable, the prosecution history illustrates that these claims would not have issued under current law.

**B.  ORG Structure's Claims Cover Unpatentable Abstract Ideas or Concepts**

    *i.    All Claims of the '010 Patent are Invalid Under 35 U.S.C. § 101.*

Independent claims 1 and 13 of the '010 Patent share the following limitations:

- defining a hierarchical organizational structure of positions within an organization;
- associating one of a plurality of roles with each of the positions;
- defining one or more business processes;
- associating one or more access/approval rules with a first one of the business processes, wherein the access/approval rules are applicable to a first subset of the roles;
- automatically associating the access/approval rules with the first business process for all positions that are subordinate to the first position within the hierarchical organizational structure and that are associated with the first subset of roles.

(*See* Exhibit G-1; the charts attached as Exhibit G show and compare the asserted patent claims' language).  In short, these claim limitations involve (a) assigning access or approval privileges to an employee based on the employee's role in the organization and (b) automatically assigning those same access and approval privileges to some or all of the employee's subordinates.

    As originally presented to the PTO, claims 1 and 13 contained only the limitations stated above, which are simply general concepts inherent in the abstract idea of hierarchical and role-based access controls.  They do not require a particular machine, nor do they transform any article.  The same conclusion was reached by the PTO examiner during the prosecution of the '010 Patent as evidenced by a rejection of claims 1 and 13 as unpatentable subject matter under 35 U.S.C. § 101. (*See* Exhibit E).  In response to the examiner's rejection, the applicant added the following limitation to claim 1:

        enabling access by positions associated with the first subset of roles to the first one
        of the business processes according to the access/approval rules

(*See* Exhibit F).  Although the examiner allowed the amended claim language under then-existing law governing patentable subject matter, the added limitation does not save claim 1 from invalidity under the principles set forth in *Bilski* and its progeny.  The limitation of enabling access based on the previously claimed rules and roles is merely a continuation of the abstract

1    process described in the other limitations. It does not require the use of a particular machine, nor

2    does it transform any article.

3           Dependent claims 2-12 of the '010 Patent do not add any subject matter that would render

4    them patentable.  Instead, the dependent claims merely elaborate upon the abstract concepts of

5    claim 1, or recite insignificant extra-solution activity.  For example, claims 2-4 recite the

6    characteristics of the roles in the system, and claims 7 and 8 provide certain details about the

7    function of the access/approval rules.  None of the claims requires a particular machine or

8    transforms any article, much less in the meaningful way required by *Bilski*.  Accordingly, claims

9    2-12 of the '010 Patent are also invalid under 35 U.S.C. § 101.

10          The same is true for independent claim 13 and the claims 14-20 that depend upon it.  In

11   response to the examiner's rejection for unpatentable subject matter, the applicant amended claim

12   13 by adding the phrase "encoded on a computer-readable medium" to the preamble. (*See*

13   Exhibits E and F).  The addition of that phrase "fails to impose any meaningful limits on the

14   abstract process."[4]  *In re Bilski,* 545 F.3d at 961.  "In order for the addition of a machine to

15   impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the

16   claimed method to be performed, rather than function solely as an obvious mechanism for

17   permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for

18   performing calculations."  *SiRF Tech., Inc. v. ITC,* 601 F.3d 1319, 1333 (Fed. Cir. 2010).  A

19   machine meaningfully limits a method when the machine is "essential to the operation of the

20   claimed methods."  *Id.*

21          Courts have routinely found that the recitation of a generic computer, as here, does not

22   allow a claim to survive 35 U.S.C. 101's threshold patentability inquiry.  *CyberSource*, 654 F.3d

23   at 1375 ("[M]erely claiming a software implementation of a purely mental process that could

24   otherwise be performed without the use of a computer does not satisfy the machine prong of the

---

[4] Because claims 14-18 contain limitations analogous to dependent claims 2-6, and dependent claims 19 and 20 are analogous to dependent claims 10 and 11, (*See* Exhibit G-8), these claims are invalid for the same reasons discussed above.

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 12-CV-00348 SBA

machine-or-transformation test."); *Dealertrack*, 674 F.3d at 1333 ("Simply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible."); *Ex parte Halligan,* 89 U.S.P.Q.2d 1355, 1365 (B.P.A.I. 2008) (the recitation of a general purpose computer in combination with purely functional steps "exalt[s] form over substance").

### ii.    All Claims of the '156 Patent are Invalid Under 35 U.S.C. § 101.

Independent claim 1 of the '156 Patent is similar to independent claim 1 of the '010 Patent, except that it recites a method "implemented in a system having a business processor engine coupled to one or more data sources." (*See* Exhibit G-4).  Nothing in the specification of the '156 Patent links the "business processor engine" to any particular machine or apparatus.  To the contrary, Figure 3 of the '156 Patent shows the "business processor engine" as a "black box" with various inputs and outputs.  (*See* Exhibit B).  Even if the "business processor engine" is considered to be a computer, the recitation of such a general purpose computer to perform an otherwise abstract algorithm does not save claim 1 of the '156 Patent from invalidity, for the reasons discussed above.  Therefore, claim 1 of the '156 Patent is invalid under 35 U.S.C. § 101.  Because dependent claims 2-12 recite essentially identical limitations as dependent claims 2-12 of the '010 Patent, (*See* Exhibit G-8), these claims are invalid for the reasons discussed above.

Independent claim 13 of the '156 Patent contains similar limitations to claim 1, except that claim 13's preamble recites a "product comprising a computer-readable medium having instructions encoded thereon which are executable by a computer system...."  (*See* Exhibit G-5). This recitation claims nothing more than a general purpose computer, which does not impose a meaningful limit on the claimed process for the reasons previously discussed, rendering claim 13 invalid under 35 U.S.C. § 101.  Because dependent claims 14-20 recite essentially identical limitations as dependent claims 14-20 of the '010 Patent, (*See* Exhibit G-8), these claims are invalid for the same reasons as discussed above.

Independent claim 21 of the '156 Patent shares the key limitations of claim 1 of the '156 Patent, except that claim 21's preamble recites a "computer-readable medium having instructions

encoded thereon which are executable by a computer system to perform the method." (*See* Exhibit G-2). As with the previous claims, this recitation of a general purpose computer on which the abstract algorithm could be performed does not impose any meaningful limits on the claimed process. Therefore, claim 21 of the '156 Patent is also invalid.

Independent claim 22 of the '156 Patent contains the same preamble as claim 21, and claim 22's remaining limitations do nothing to make the claim patentable. (*See* Exhibit G-2). The "receiving data" and "storing" limitations are nothing more than data gathering steps that collect and store the inputs and outputs of the abstract algorithm. As the Federal Circuit held, "adding a data-gathering step to an algorithm is insufficient to convert that algorithm into a patent-eligible process." *In re Bilski,* 545 F.3d at 963. The mere storage of data on a personal computer, as recited in claims 21 and 22, amounts to nothing more than the kind of extraneous "post-solution activity" that the BPAI has indicated is "insignificant" and not sufficient to impose meaningful limits on the scope of the claims. *Ex parte Myr,* 2009 WL 3006497, at *9 (B.P.A.I. 2009). Accordingly, claim 22 of the '156 Patent is also invalid under 35 U.S.C. § 101.

### iii.  All Claims of the '777 Patent are Invalid Under 35 U.S.C. § 101.

Independent claims 1, 13, 21, and 22 of the '777 Patent are analogous to independent claims 1, 13, 21, and 22 of the '156 Patent, except that the step of associating roles with positions incorporates an additional abstract concept of a "user." (*See* Exhibits G-4 - G-7). The concept of a "user" in an organizational hierarchy is an abstraction that fails to give the claims any tangible or physical manifestation. The association of a "user" with roles or rules does not require a particular machine, nor does it transform any article. For this reason, independent claims 1, 13, 21, and 22 of the '777 Patent are invalid under 35 U.S.C. § 101. Because the limitations of the dependent claims of the '777 Patent are analogous to the dependent claims of the '010 and '156 Patents, (*See* Exhibit G-8), they are invalid for the same reasons discussed above.

In short, allowing ORG Structure to assert patent claims covering ubiquitous business activity, such as creating organizational hierarchies, assigning roles within those hierarchies, and determining what people in those roles can see and do based on their role and position within the

hierarchy would grant it a monopoly over simple business concepts. *See Bilski,* 130 S. Ct. at 3231 ("Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea.").

### C. Recent Federal Circuit Decisions Confirm That the Asserted Patents Claim Unpatentable Subject Matter.

In applying *Bilski,* the Federal Circuit has issued five recent opinions involving computer-implemented business method claims analogous to the Asserted Patents. In three of those cases, the Court found the patent claims invalid even though they included computer limitations analogous to those in the Asserted Patents. In a fourth opinion, the Court concluded that the claims failed the "machine or transformation" test but remanded for further consideration of whether the claims might satisfy some other test. Only one of the five cases resulted in a finding that the invention was patentable under Section 101. Other Federal Circuit opinions, however, have largely limited that decision to its facts and, in any event, the Supreme Court recently remanded it for further consideration in light of the supervening decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289, 1293 (2012).

#### i. *CyberSource Corp. v. Retail Decisions, Inc.*

In *CyberSource Corp. v. Retail Decisions, Inc.*, the Federal Circuit held that patent claims directed to a "method and system for detecting fraud in a credit card transaction" failed to claim patentable subject matter, because (i) they were "drawn to an unpatentable mental process—a subcategory of unpatentable abstract ideas," and (ii) they could "be performed in the human mind, or by a human using a pen and paper." 654 F.3d 1366, 1371-72 (Fed. Cir. 2011). The Court emphasized that the "mere collection and organization of data…is insufficient to meet the transformation prong of the test" and further noted that the patent claims did "not require the method to be performed by a particular machine, or even a machine at all." *Id.* at 1370.

*CyberSource* reaffirms and emphasizes the basic Section 101 principle that the mere recitation of certain computer related limitations does not render otherwise abstract ideas patentable. To qualify for patentability, the computer must impose "a sufficiently meaningful

1   limit on the claim's scope." *Id*. at 1375.  As the Court explained: "[M]erely claiming a software

2   implementation of a purely mental process that could otherwise be performed without the use of a

3   computer does not satisfy the machine prong of the machine-or-transformation test." *Id.*

4       Similar to the patent claims that the Federal Circuit declared invalid in *CyberSource,* the

5   Asserted Patents' claims are not limited to any specific machine.  Instead, the Asserted Patents

6   lay claim to broad, abstract business concepts involving little more than defining an

7   organization's structure in an organizational chart, assigning job positions within that

8   organizational structure, and assigning rules or approval rights to the positions defined in the prior

9   steps.  As in *CyberSource*, these are abstract business concepts that are invalid.

10      ***ii.    Dealertrack, Inc. v. Huber***

11      The Federal Circuit also rejected as non-patentable claims directed to a computer-aided

12  method and system for processing credit applications over electronic networks, despite inclusion

13  of a limitation related to performing the method "automatically" using a computer and the

14  disclosure of certain algorithms in the specification.  *Dealertrack*, 674 F.3d at 1333 (Fed. Cir.

15  2012).  The patentee in *Dealertrack* argued that its patent claims were not abstract because (i)

16  they were tied to a computer and such computer components as a central processor, remote

17  application entry, displays, and funding source terminal devices; and (ii) the patent specification

18  contained flowcharts that supposedly tied the claims to a particular computer.  *See id.* at 1331-

19  1332.  In rejecting these arguments, the Court noted that the "[t]he claims are silent as to how a

20  computer aids the method, the extent to which a computer aids the method, or the significance of

21  a computer to the performance of the method."  *Id*. at 1333.

22      The same conclusion applies with equal force to the Asserted Patents.  For example,

23  independent claims 1 and 13 of the '010 Patent consist of the otherwise purely mental steps of: (a)

24  *defining* an organizational structure of positions, (b) *associating* roles with those positions, (c)

25  *defining* business processes, and (d) *associating* those roles and positions with access/approval

26  rules.  These steps are analogous to the claims rejected in *Dealertrack* related to *receiving* data,

27  *selecting* data, *forwarding* reply data, and using that data to process credit applications is no more

28

abstract than ORG Structure's patent claims.  *See id.* at 1321-1322.  Moreover, the Asserted Patents' concept of "automatically" associating rules with positions is no different than the "automated" processing using a computer that was rejected in *Dealertrack*.  *Id.* at 1318 ("Dealertrack proposed to automate the process through the use of a 'central processor,' which receives credit application data from dealers, processes the data to conform to the individual application forms of different banks, forwards the completed applications to banks selected by the dealer, receives answers from the banks, and forwards those answers back to the dealer."). [5]

### iii.   *Fort Props., Inc. v. Am. Master Lease LLC*

The Federal Circuit reached a similar result in *Fort Properties., Inc. v. Am. Master Lease LLC*, holding that a patent disclosing an investment tool for real estate property owners was directed to an unpatentable abstract idea.  671 F.3d 1317, 1324 (Fed. Cir. 2012).  As in *CyberSource* and *Dealertrack*, the Court rejected patentability under Section 101 where the computer limitations in an otherwise broad business method patent did not "play a significant part in permitting the claimed method to be performed."  *Id.* at 1323.  The Court rejected the patent owner's argument that its abstract ideas became patentable merely because they entailed "real world" business actions and recited computer implementations in a manner that did not substantially limit the claims.  *Id.* at 1322.  The Asserted Patents' claims suffer from a similar defect, describing little other than "real world" business concepts, with claims that are so abstract and untethered to any particular solution that they would preempt conventional business activity. *See Bilski*, 130 S. Ct. at 3231.

───────────────────

[5] *Dealertrack* also held that *claims* that fail to cover a particular algorithm cannot be saved by flowchart algorithms in the *specification*:  "The fact that certain algorithms are disclosed in the specification does not change the outcome.  In considering patent eligibility under § 101, one must focus on the claims.  This is because a claim may 'preempt' only that which the claims encompass, not what is disclosed but left unclaimed."  *Dealertrack*, 674 F.3d at 1334.  Even if the specification could save such claims, the Asserted Patents' specifications do not disclose any particular algorithm for executing the claimed methods, and the inventor took pains to emphasize that the few citations to computer applications, such as ERP or MRP systems, did <u>not</u> limit the scope of the claims and that his disclosures were intended to cover <u>all</u> possible implementations of his broad business process claims.  (*See, e.g.,* the '010 Patent, at col. 4, ll. 9-14; 55-61).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 12-CV-00348 SBA

iv.      *Fuzzysharp Techs. Inc. v. 3DLabs Inc.*

In *Fuzzysharp Techs. Inc. v. 3DLabs Inc.*, the Federal Circuit agreed with this Court's determination that general purpose hardware and software limitations were insufficient, under the "machine-or-transformation" test, as applied to patent claims related to three-dimensional computer graphics technology.  447 Fed. Appx. 182, 186 (Fed. Cir. 2011).  While the Federal Circuit vacated and remanded for further proceedings in light of the Supreme Court's supervening ruling in *Bilski*, the Court agreed with this Court that reciting general purpose hardware and software limitations is insufficient to satisfy that widely used test of patentability:

> The references to a computer in claim 12 impose only two limitations: the machine must be able to compute, and it must be able to store data. Those functions are essentially synonymous with the term "computer" and thus add little or nothing to simply claiming the use of a general purpose computer. The recitation of computer functions in the claim thus does not confine the preemptive effect of the claim because the underlying method has "no substantial practical application except in connection with a digital computer."

*Id.* (citations omitted).  Here, the USPTO examiner allowed claim 13 of the '010 patent only with the addition of a general purpose computer limitation, i.e., "encoded on a computer-readable medium," a "limitation" that, as explained in *Fuzzysharp*, is no limitation at all.  If Fuzzysharp's inherently computer-dependent "invention" failed the "machine or transformation" test, then the Asserted Patents' claims surely fail, as they are little more than business process descriptions, nominally tied in a few instances to non-specific hardware and software limitations.

v.      *Ultramercial, LLC v. Hulu, LLC*

The only post-*Bilski* Federal Circuit decision upholding the patentability of a computer-implemented method patent in the face of a Section 101 challenge is *Ultramercial, LLC v. Hulu, LLC,* 657 F.3d 1323 (Fed. Cir. 2011).  That decision, however, does not render ORG Structure's claims patentable. As an initial matter, the Supreme Court has vacated and remanded to the Federal Circuit for further consideration in light of the Court's intervening decision in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S.Ct. 1289, 1293 (2012).  *See WildTangent, Inc. v. Ultramercial, LLC,* 2012 WL 369157, at *1 (U.S. May 21, 2012).  The Federal Circuit's *Ultramercial* panel based its opinion expressly on the view that the patentable subject matter

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 12-CV-00348 SBA

limitations of Section 101 impose only the coarsest of "coarse filters," and that "primary attention" should be directed to the "patentability criteria of the rest of the Patent Act," such as novelty, obviousness, and written description under Sections 102, 103 and 112. *Ultramercial,* 657 F.3d at 1327. A unanimous Supreme Court in *Prometheus* rejected that view, reaffirming the vitality of the patent-eligibility requirement under Section 101 as a threshold inquiry, separate and distinct from any analysis of novelty, non-obviousness or Section 112 disclosure and finding that the claims involved "well-understood, routine, conventional activity" which, if patented, would "risk disproportionately tying up the use of the underlying natural laws, inhibiting their use in the making of further discoveries." *Mayo Collaborative Servs.*, 132 S. Ct. at 1304. This focus on the degree of "preemption" associated with broad, abstract claims is wholly missing from *Ultramercial,* but it lies at the heart of *Prometheus* and also *Bilski.*

Moreover, to the extent that *Ultramercial* has any continued vitality, subsequent Federal Circuit decisions have limited it to its facts, none of which are present in this case. *See Fort Properties,* 671 F.3d at 1323 (distinguishing *Ultramercial* on the basis the claims there "require[d] intricate and complex computer programming," "specific application to the Internet and a cybermarket environment," and "advances in computer technology"); *see also Dealertrack,* 674 F.3d at 1334 (distinguishing *Ultramercial* as involving concrete steps requiring an extensive computer interface) (citations omitted). Nothing in the Asserted Patents exhibits the programming complexity, intricacy or specificity the Federal Circuit found in *Ultramercial*. To the extent that the claims of the Asserted Patents require a computer at all, they do not disclose any "intricate and complex computer programming," and the invention described in the claims does not disclose any "advance in computer technology." *See Ultramercial*, 657 F.3d at 1323. Rather, the limitations within the Asserted Patents' claims themselves, which require the methods be "automatically" implemented, presumably though not expressly by using a computer, are mere post-solution activities that impose no limits on the substantive scope of the claims. *See Gottshalck v. Benson,* 409 U.S. 63, 71-72 (1972).

**IV.   CONCLUSION**

The Asserted Patents claim broad methods for defining organizations based on job positions, and access rules and for "automatically" applying those rules to other people or positions within the organization.  They do not, however, define a *particular*, *meaningfully limited* method by which that "automation" occurs.  No special purpose hardware is defined in the claims, nor is any particular software algorithm claimed.  The patents do not describe any complex or intricate programming and do not disclose any advances in the computing technology. Instead, the Asserted Patents purport to lay claim to the *abstract concept* of automated role inheritance.  That concept is an abstract business method and the Court should reject the broad preemption that would result from enforcement of the Asserted Patents.  Because the patent claims are plainly drawn to patent-ineligible subject matter, no claim construction or other factual inquiry is required to find the claims invalid under 35 U.S.C. § 101 as a matter of law.  For these reasons, Oracle respectfully requests that the Court grant Oracle's motion and dismiss each of the each of the patent infringement counts in ORG Structure's First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Dated:  June 15, 2012                    HOGAN LOVELLS US LLP

                                         By:    */s/ Clayton C. James*
                                                Clayton C. James

                                         Attorneys for Defendants
                                         ORACLE CORPORATION and
                                         ORACLE AMERICA, INC.